UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOSEPH R. MAY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:25-cv-300-KAC-JEM |
| | ) | |
| SOUTHEAST BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 16] filed by Plaintiffs Joseph R. May and Greta L. May, who are proceeding pro se. For the reasons below, the Court denies the Motion.

**I.     Background[1]**

In 2022, Plaintiffs and Defendant Southeast Bank executed a "Construction Loan Agreement" [Doc. 8-2], "Promissory Note" [Doc. 8-1], and "Security Agreement" [Doc. 8-3], "with a Construction Deed of Trust" [Doc. 8-4], regarding property that Plaintiffs owned at 758 Lakeside Road in Madisonville, Tennessee ("the Subject Property") [Doc. 1 at 2]. An "unidentified 'Authorized Signer'" signed the Construction Loan Agreement "on behalf of" Defendant [Doc. 1 at 3 ¶ 3].

---

[1] Plaintiffs have submitted evidence and argument in support of their Motion [*see* Docs. 16, 18, 19, 21, 22, 23, 25], and Defendant has responded, [*see* Doc. 20]. No Party has requested a hearing. The Court describes the facts in the light most favorable to Plaintiffs, liberally construing their filings, and resolving any factual dispute in their favor. In this way, the Court removes any factual disputes or questions of credibility. Therefore, a live hearing is not necessary. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007); *see also* 11A *Fed. Prac. & Proc. Civ.* § 2949 (3d ed. 2025).

1

Plaintiffs thereafter entered a "Construction Contract" [Doc. 16-6] with Southeast Commercial LLC and Active Homes LLC, [*see* Doc. 16-6 at 9], regarding a project at the Subject Property, [*see* Doc. 1 at 2]. "Gary Smith" signed the Construction Contract as "General Contractor," "without [Plaintiffs'] consent," and Jamie Smith signed on behalf of Southeast Commercial LLC [*See* Docs. 16-6 at 9; 16-3 at 2]. Plaintiffs had "expected Jamie Smith to sign as the General contractor," not Gary Smith [Doc. 16-3 at 2].

Plaintiffs "discovered" that "Jamie Smith was not [a] licensed" contractor and was improperly "operating under" the license of Gary Smith [Doc. 1 ¶ 7]. Gary Smith has previously "been sanction[ed] by the Tennessee License Board" [*Id.*; *see also* Doc. 16-4 at 2-8]. Plaintiffs "informed" Defendant of this issue, and Defendant responded that Plaintiffs "selected the contractor and are to remain in business with the current contract" under their agreement [*See* Doc. 1 ¶¶ 7-8]. To "Plaintiffs' knowledge," neither Gary Smith nor Jamie Smith ever "attended the construction site" [*Id.* ¶ 9].

Defendant "approved and issued draws on the construction loan" based on "invoices" provided "without requesting proof of actual payment" to vendors or suppliers who were performing the work at the direction of the contractor [*See id.* ¶¶ 5-6]. Plaintiffs realized that "multiple invoices were padded with inflated labor," and included "incorrect material" [*Id.* ¶ 10]. Plaintiffs eventually "took over the project themselves" and "personally paid subcontractors to complete" the project at the Subject Property [*Id.* ¶ 11].

On "February 14, 2025," Defendant initiated a state action in Knox County Chancery Court alleging that Plaintiffs defaulted on the Promissory Note [*See* Docs. 19-9 ¶ 6; 20 at 3]. Plaintiffs do not assert that they paid the amounts due on the Promissory Note. Defendant "conducted" a

2

foreclosure "sale" and sold the Subject Property on June 13, 2025 [Doc. 1 ¶ 15]. Plaintiffs, however, have not vacated the Subject Property [*See* Doc. 16 at 1-2].

On June 27, 2025, Plaintiffs filed their Complaint in this federal court [Doc. 1]. Liberally construed, the Complaint raises (1) state claims for (a) "Fraud and Fraudulent Inducement," (b) "Negligent Disbursement/Breach of Oversight Duty," and (c) breach of contract, and (2) federal claims for violations of (a) the Truth in Lending Act (TILA) and (b) the Real Estate Settlement Procedures Act (RESPA); all related to the dispute over the Subject Property [*Id.* at 5-6]. As relief, the Complaint seeks (1) declaratory relief, (2) "[c]ancellation" or "reversal" of any foreclosure sale of the Subject Property, and (3) damages [*Id.* at 6].

Defendant filed a Counterclaim [*See* Doc. 8]. Defendant asserts that Plaintiffs breached the Promissory Note and that even after the sale of the Subject Property, Plaintiffs still owe $14,931.47 on the Promissory Note [*See id.* at 7-11].

On July 21, Defendant initiated proceedings in state court to evict Plaintiffs from the Subject Property [*See* Docs. 15 at 1; 15-2 at 2]. Those proceedings are currently ongoing in the "General Sessions Court of Monroe County, Tennessee" [*See id.*; *see also* Doc. 16 at 1].

On August 8, Plaintiffs filed the instant "Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 16]. In the Motion, they ask the Court to temporarily "enjoin Defendant . . . from proceeding with or enforcing" the eviction proceedings "currently pending in Monroe County General Sessions Court" and enjoin Defendant from "otherwise interfering with Plaintiffs' possession of the [S]ubject [P]roperty, pending a full hearing on the merits" [Doc. 16 at 1, 2]. Plaintiffs argue, among other things, that they face "imminent and irreparable harm by way of wrongful eviction" and that "[p]ermitting the eviction to proceed" would "disrupt their ability to litigate this case meaningfully" [*Id.* at 1-2]. Defendant opposed [Doc. 20]. And Plaintiffs

3

replied [Doc. 21].² Plaintiffs also submitted additional evidence and argument in support of their Motion [*See* Docs. 18, 19, 21, 22, 23, 25]. Defendant has had a sufficient opportunity to consider those filings and submit any additional evidence or argument.

II. <u>Analysis</u>

A preliminary injunction³ is "an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial," and it is "never awarded as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted); *Towerco 2013, LLC v. Berlin Twp. Bd. of Trs.*, 110 F.4th 870, 879 (6th Cir. 2024) (quotation and citation omitted). In determining whether to issue a preliminary injunction, the Court "consider[s] and balance[s]" "(1) the moving party's likelihood of success on the merits; (2) the moving party's likelihood of suffering irreparable injury absent the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) the degree to which the injunction would serve the public interest." *Towerco 2013, LLC*, 110 F.4th at 879 (citation omitted); *see Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 365-66 (6th Cir. 2022) (quotation omitted) (en banc) (per curiam). "While no single factor necessarily is dispositive," the first factor—the "likelihood of success"—

---

² Based on the representations in Plaintiffs' Motion and information in the Parties' filings regarding ongoing litigation, the Court ordered the Parties to brief "whether the Court should abstain from hearing this action given the pending parallel state proceedings" [Doc. 17 at 1]. Because it does not appear that the parallel "civil proceeding[s] involve certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions" for purposes of *Younger*, *see Aaron v. O'Connor*, 914 F.3d 1010, 1016-17 (6th Cir. 2019) (cleaned up), the Court declines to abstain here.

³ Because Plaintiffs did not meet the procedural requirements to obtain a temporary restraining order, the Court liberally construes Plaintiffs' Motion as one for a preliminary injunction. *See* Fed. R. Civ. P. 65(b). But "[p]reliminary injunctions and TROs share the same four factors in determining whether to grant the relief." *See Bobay v. Wright State Univ.,* 2023 WL 3963847, *3 (6th Cir. June 13, 2023). And the result here would be the same whether the Court liberally construes Plaintiffs' Motion as one for a temporary restraining order or a preliminary injunction.

4

is "in many instances . . . determinative." *Dahl v. Bd. of Tr. of W. Mich. Univ.*, 15 F.4th 728, 730 (6th Cir. 2021) (cleaned up) (citations omitted).

### A. Plaintiffs Fail To Demonstrate A Likelihood Of Success On The Merits Of Any Claim In Their Complaint.

Plaintiffs are "not required to prove [their] case in full" at this early stage. *See Certified Restoration Dry Cleaning Network, LLC, v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007). But Plaintiffs must make a "clear showing" that they are likely to succeed on the merits of at least one claim to secure preliminary relief. *See Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024); *see also Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quotation omitted). They fail to do so.

#### i. Fraud And Fraudulent Inducement Claim

To succeed on a claim against Defendant for fraud or fraudulent inducement under Tennessee law, Plaintiffs must prove that (1) Defendant "made a false statement concerning a fact material to the transaction," (2) Defendant did so with "knowledge of the statement's falsity or utter disregard for its truth" and "with the intent of inducing reliance on the statement," (3) Plaintiffs "reasonably relied" on the statement, and (4) their reliance caused injury to them. *See Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011) (citations omitted).

In the Complaint, Plaintiffs rely on various theories of liability. **First**, they rely on the alleged "misrepresentation of proper licensing and contracting authority" by the contractors working on the Subject Property [*See* Doc. 1 at 5]. But even accepting those allegations as true, they say nothing about any misrepresentation by Defendant Southeast Bank. **Second**, Plaintiffs assert that the Construction Loan Agreement was executed by an "unidentified" bank signatory [*See id.*]. But the Construction Loan Agreement was signed, and there is no evidence that connects the bank signatory to any fraud or induced reliance by Plaintiffs. **Third**, Plaintiffs assert that Defendant made "[f]alse statements regarding [Plaintiffs'] receipt of $5 cash consideration" for

5

the Construction Deed of Trust [*Id.*]. But that legal conclusion is based only on Plaintiffs' factual assertion that they "do not recall receiving such funds or any separate consideration" [*Id.* at 3]. Failure to recall is not enough to support an allegation that Plaintiffs did not, in fact, receive consideration in support of the agreement. **Fourth**, Plaintiffs claim that Defendant "[k]nowingly permitting padded and fraudulent invoices" under the Construction Loan Agreement [*Id.* at 5]. But, even putting aside that the Construction Loan Agreement required Plaintiffs, themselves, to specifically request disbursements to pay invoices under the loan, [*see* Doc. 8-2 at 4], Plaintiffs present no evidence that Defendant knew of any fraudulent conduct by the contractors or made any false representation with respect to any invoice that was paid. Accordingly, Plaintiffs fail to clearly show a likelihood of success on this claim.

    ii. **Negligence Claim**

A plaintiff seeking to recover for negligence—which is "basically defined as the failure to exercise reasonable care"—must prove that the defendant owed a "duty of care" and that the defendant's conduct breached its duty, causing injury to the plaintiff. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citations omitted). The law does not impose a "special" standard of care in this context. *See Suzich v. Booker*, No. W2011-02583-COA-R3CV, 2012 WL 3055991, at *4 (Tenn. Ct. App. July 27, 2012) (noting that "a lender has no affirmative duty to protect the borrower's interests" unless the lender "assumes such a duty" by agreement, and "a lender's duty to a borrower" in a construction-loan context "apparently has not been considered by Tennessee Courts" (citations omitted)). The applicable "duty of care" required Defendant "to conform to a reasonable person's standard of care . . . to protect against unreasonable risk of harm." *See id.* (citations omitted).

6

The Complaint bases the negligence claim on Defendant's (1) "[d]isbursement of funds to an unlicensed contractor," (2) "[f]ailure to audit invoices or inspect work," and (3) "[f]ailure to disclose actual disbursement mechanics to the borrower" [Doc. 1 at 5]. But even viewing all of the evidence in Plaintiffs' favor, Plaintiffs fail to make a "clear showing" that Defendant acted unreasonably or in breach of any duty of care as it relates to the Construction Loan Agreement or Subject Property. The contract between the Parties, the Construction Loan Agreement discussed in more detail below, set forth the general obligations of the Parties at issue. And Plaintiffs identify no basis in fact or law to impose the additional duties on Defendant that Plaintiffs allege Defendant breached.

### iii. Breach Of Contract Claim

To succeed on a breach of contract claim under Tennessee law,[4] a plaintiff "must prove: (1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 281 (6th Cir. 2018) (quoting *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816-17 (Tenn. Ct. App. 2011)).

Liberally construed, Plaintiffs base their breach of contract claim on two theories. ***First***, they assert that Defendant "failed to fulfill its obligations under" the Construction Loan Agreement [*See* Doc. 1 at 6]. But they fail to identify which precise obligations were allegedly violated and to what end. "[J]udges are not like pigs, hunting for truffles that might be buried in the record." *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (cleaned up). And

---

[4] The relevant contracts contain a Tennessee choice of law provision [*See* Doc. 8-2 at 8; 8-3 at 3; 8-4 at 9]. And the Parties apply Tennessee law in their arguments. The Court accepts that agreement and applies Tennessee substantive law. *See Town of Smyrna v. Municipal Gas Auth. of Georgia*, 723 F.3d 640, 646-47 (6th Cir. 2013).

7

even after hunting, the record before the Court fails to present any theory of breach of the Construction Loan Agreement by Defendant sufficient to warrant preliminary relief. **_Second_**, Plaintiffs assert that "Plaintiff was misled into believing construction oversight and disbursement controls would be in place" [Doc. 1 at 6]. But the Construction Loan Agreement itself, signed by Plaintiffs, sets forth the obligations of the Parties to the agreement [*See* Doc. 8-2]. According to the Construction Loan Agreement, to seek disbursement of loan funds, Plaintiffs themselves were required to submit an application and payment request form to Defendant [*Id.* at 4]. Thus, it was Plaintiffs who had an obligation to provide oversight and make representations to Defendant for funds to be disbursed. Therefore, Plaintiffs fail to make the necessary showing on their breach of contract claim.

### iv. TILA And RESPA Claims

Finally, Plaintiffs assert claims under two federal statutes—TILA, 15 U.S.C. § 1601 *et seq.*, and RESPA, 12 U.S.C. § 2601 *et seq.*, for "[f]ailure to disclose the actual distribution of loan proceeds" [*See* Doc. 1 at 5]. These statutes govern a vast sea of conduct in the lender-borrower context. *See e.g.*, *Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 923 (6th Cir. 1980) (noting that the "purposes underlying" both statutes "are very similar"). But Plaintiffs have identified no portion of either statute that they believe Defendant violated. Nor have they identified a general requirement of either statute that they believe Defendant violated. And even a liberal reading of the record and review of TILA and RESPA fail to reveal a qualifying requirement that Defendant violated here. *See Emerson.*, 446 F. App'x at 736. In the end, because Plaintiffs fail to make a "clear showing" that they are likely to succeed on any of the claims raised in the Complaint, the first factor weighs against them. *See Dahl*, 15 F.4th at 730.

8

## B. The Irreparable Injury Factor Cuts Both Ways.

The second factor the Court considers is Plaintiffs' likelihood of irreparable harm absent an injunction. *See Towerco 2013, LLC*, 110 F.4th at 879. A plaintiff must demonstrate irreparable harm. *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019). Harm is "irreparable if it is not fully compensable by money damages," *see Overstreet*, 305 F.3d at 578, and "actual and imminent" rather than "speculative or unsubstantiated," *see Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). "[I]n certain circumstances the threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable harm." *See Smith v. State Farm Fire & Cas. Co.*, 737 F.Supp.2d 702, 713 (E.D. Mich. 2010) (cleaned up). But the equities on this factor cut both ways in this case because, as discussed above, Plaintiffs have not shown that their potential eviction is improper or in violation of any law. Thus, this factor is a wash.

## C. The Last Two Factors Weigh In Defendant's Favor.

Finally, the last two equitable factors weigh in Defendant's favor. **First**, issuing the requested injunction would likely substantially harm Defendant by preventing it from seeking to establish physical ownership of the Subject Property and precluding it from continuing to prosecute the ongoing state court eviction proceedings. **Second**, as to the public interest, the state has "strong interests in . . . providing a procedure for peaceful resolution of disputes" regarding the "possession" of property. *See Shaffer v. Heitner*, 433 U.S. 186, 208 (1977); *see also, e.g.*, *Leonard v. Montgomery*, No. 2:22-CV-4502, 2023 WL 1070246, at *2 (S.D. Ohio Jan. 27, 2023) (noting that "[t]ime and again, courts have held that eviction proceedings pending in a state court implicate important state interests") (collecting cases). And issuing an injunction here would interfere with ongoing state eviction proceedings. On balance, then, no preliminary relief is warranted here.

9

## III. Conclusion

For the above reasons, the Court **DENIES** Plaintiffs' "Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 16].

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge